# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 20-11714 |
| PATRICK REILY MURPHY, JR., | § § | |
| and | § § | |
| MITSY JAMES MURPHY | § § | CHAPTER 7 |
| DEBTORS. | § | |

| | | |
|---|---|---|
| PROVIDENCE BANK, | § § | ADVERSARY PROCEEDING |
| PLAINTIFF, | § § | CASE NO. _____ |
| vs. | § § | |
| PATRICK REILY MURPHY, JR., | § § | |
| DEFENDANT. | § | |

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF INDEBTEDNESS PURSUANT TO 11 U.S.C. §523 BY PROVIDENCE BANK**

COMES NOW Providence Bank (hereinafter "Providence"), an unsecured creditor, by and through its counsel of record, and files this Complaint pursuant to 11 U.S.C. §§523(a)(2) and 523(a)(6) and Fed. R. Bankr. P. 4007 against Debtor Patrick Reilly Murphy, Jr. (hereinafter, "Debtor") to obtain a determination that the indebtedness owed by Debtor to Providence is non-dischargeable and grant a judgment to Providence for such amount as further set forth in this Complaint.

**JURISDICTION**

1. On July 1, 2020, Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C., §101, et seq.

2. This Court has jurisdiction over this core proceeding pursuant to Title 28 U.S.C. §157(b)(2)(i) and 11 U.S.C. §523(a).

3. Providence is a Missouri banking corporation and creditor of Debtor.

4. Debtor is an individual residing in Fairhope, Alabama and is the sole shareholder, principal, owner, director, and President of RTR Holdings, Inc. ("RTR Holdings").

5. RTR Holdings is the sole member of Point Clear Insurance Partners, L.L.C. ("PCIP") and Point Clear Insurance Services, L.L.C. ("PCIS").

6. RTR Holdings, PCIP, and PCIS constitute insiders of Debtor, as defined under 11 U.S.C. § 101(31).

## BACKGROUND

7. On March 14, 2019, Debtor, as sole owner and the President of RTR Holdings, applied on behalf of RTR Holdings, PCIP, and PCIS for a loan from Providence to refinance existing debt incurred by Debtor and for additional funds.[1]

8. In addition to the Credit Application, Debtor also submitted to Providence a Personal Financial Statement,[2] the 2018 Annual Income and Expense Statement of RTR Holdings,[3] and various insurance policy and commission reports for PCIP and PCIS[4], which

---

[1] A true and correct copy of the Business Credit Application ("Credit Application") submitted by Debtor on behalf of RTR Holdings to Providence is attached hereto and incorporated herein as Exhibit "A."
[2] A true and correct copy of Debtor's Personal Financial Statement is attached hereto and incorporated herein as Exhibit "B."
[3] A true and correct copy of RTR Holdings' 2018 Annualized Income and Expenses Statement is attached hereto and incorporated herein as Exhibit "C."
[4] A true and correct copy of the insurance policy and commission reports of PCIP and PCIS are attached hereto and incorporated herein as collective Exhibit "D."

reflected total annualized insurance sales commissions to PCIP and PCIS, and in turn to RTR Holdings, of more than $1,7000,0000.

9. Based upon this Credit Application, Debtor's personal financial statement, RTR Holdings' 2018 Annual Income and Expense Statement, and the various insurance policy and commission reports for PCIP and PCIS, and upon reasonable reliance on the information contained therein, Providence extended a loan to RTR Holdings, PCIP, and PCIS ("Borrower") in the principal sum of $1,848,650.00 on May 8, 2019 ("Providence Loan")[5].

10. On May 8, 2019, as a requirement of the Providence Loan, Debtor, on behalf of insiders RTR Holdings, PCIP, and PCIS, executed and delivered a Business Loan Agreement.[6]

11. As set forth in the Business Loan Agreement, Debtor represented that "[e]ach of Borrower's financial statements supplied to Lender fully and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender."

12. As further inducement to for the Providence Loan, Borrower granted Providence a security interest in "all amounts payable to Borrower with respect to any commissions, including Insurance Commissions (as defined in the Loan Agreement) due on or after the date hereof."[7]

---

[5] A true and correct copy of the Promissory Note is attached hereto and incorporated herein as Exhibit "E."
[6] A true and correct copy of the Business Loan Agreement is attached hereto and incorporated herein as Exhibit "F."
[7] A true and correct copy of the Commercial Security Agreement is attached hereto and incorporated herein as Exhibit "G."

13. The Additional Provisions to the Business Loan Agreement, made a part of the Business Loan Agreement, defined "Insurance Commissions" as "all commissions (including without limitation the Primary Commissions) and other amounts paid or payable to Borrower with respect to any Insurance Policies payable to Borrower from any insurance company."

14. As further inducement to Providence to extend the Providence Loan to Borrower, Debtor personally guaranteed the payment and performance of the Providence Loan.[8]

15. As of the petition date, the indebtedness owed to Providence by RTR Holdings, PCIP, PCIS and Debtor was equal to the sum of $1,913,183.45 plus reasonable attorney's fees and costs due to the occurrence of one or more events of default.

## DEBTOR'S FALSE WRITTEN STATEMENTS

16. Section 523(a)(2)B) precludes from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by…use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) in which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

17. In the Credit Application, Debtor falsely represented the annual revenue of RTR Holdings for 2018 to be $1,700,000. To support this false representation and deceive Providence, Debtor provided insurance policy and commission reports of PCIP and PCIS falsely reflecting

---

[8] A true and correct copy of Debtor's Commercial Guaranty is attached hereto and incorporated herein as Exhibit "H."

total annualized commissions to PCIP and PCIS for 2018 as $1,701,027.61. Following the filing of this Chapter 7 bankruptcy case, Providence discovered that the PCIS was no longer the agent of record and not due commissions at the time Debtor submitted the Credit Application and provided insurance policy and commission reports of PCIP on the following policies:

| Customer Name | Effective Date of Change of Agent of Record or Cancellation | Commission Falsely Reported by Debtor |
|---|---|---|
| Bryan Contractors, LLC & and Bryan Trucking, LLC | 11/26/2018 | $41,633 |
| Esfeller Construction Co., Inc. | 5/1/2018 | $68,492 |
| FC Holdings, LLC | 1/22/2018 | $300 |
| Flexicrew Staffing, Inc. ad Flexicrew Technical, LLC | 2/1/2018 | $22,751 |
| H.G. Harders & Son, Inc. | 8/30/2018 | $18,208 |
| LSB Contracting, LLC | 2/1/2018 | $24,507 |
| New Industries, LLC | 5/1/2018 | $41,273 |
| Oil Recovery Company, Inc. of Alabama | 5/1/2018 | $45,133 |
| P&H Construction Corporation | 2/1/2018 | $42,246 |
| TES Contracting Co., Inc. | 2/1/2018 | $15,429 |
| TESCO Technical Services | 2/1/2018 | $1,492 |
| TeSeCon, Inc. | 5/1/2018 | $13,930 |
| Tex Edwards Company, Inc. | 5/1/2018 | $7.649 |
| Henry Marine Services, LLC | 9/9/ 2018 | $25,775.31 |

| Tom's Marine and Salvage, LLC | 12/12/2018 | $30,664.05 |
|---|---|---|
| | Total of falsely reported annualized commissions | $401,938.36 |

18. In the commission reports provided to Providence by Debtor, Debtor represented $587,236 in total premiums and $88,085.40 in total commissions for insurance policies issued to PCIS's client by Travelers Insurance; however, following the filing of this Chapter 7 bankruptcy case, Providence discovered premiums for insurance policies issued to PCIS's client by Travelers Insurance totaled only $44,934.00 with commissions paid by Travelers Insurance in 2018 totaling $5,758.80.

19. Thus, total annualized commissions of PCIP and PCIS in 2018 were not $1,701,027.61, as Debtor represented, but were, in fact, no more than $1,216,762.65.

20. These false statements of revenue and annualized commissions are in direct conflict with Debtor's warranties in the Additional Provisions to Business Loan Agreement, which provides, "The commission information provided to Lender with respect to the Insurance Policies is true, accurate, and complete and neither the Insurance Policies nor Borrower's interest in the Insurance Commissions has been sold, transferred, disposed or, assigned or otherwise encumbered to any other party or parties," and "All information regarding the Annualized Commissions and other financial data which have been…furnished to Lender by Borrower are…true and correct in all respects."

21.     Debtor also falsely represented in the Additional Provisions to the Business Loan Agreement that "Borrower has not received any oral or written notice of default, breach, cancellation or lapse with respect to any material Insurance Policy…, and, to Borrower's knowledge, no circumstances exist which, with the giving of notice, lapse of time or happening of any other event or condition, would become or cause a default or event of default, breach, cancellation or lapse with respect to such material Insurance Policy…"

22.     Debtor also falsely represented his and PCIS's debt obligations. Debtor and PCIS became indebted to Inland & Coastal Premium Finance Company, LLC in the principal amount of $100,000 on September 24, 2018; however, Debtor failed to disclose this obligation in either his Personal Financial Statement or the Credit Application.

23.     Debtor also falsely represented in the Business Loan Agreement that "[n]o litigation, claim, investigation, administrative proceeding or similar action….against Borrower is pending or threatened…" and in the Additional Provisions to Business Loan Agreement that "Borrower and, to Borrower's knowledge, each Insurance Company or any other applicable party, is not in default in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in any material contract or agreement to which Borrower is a party." At the time of Debtor's execution of the Business Loan Agreement on behalf of insiders RTR Holdings, PCIP, and PCIS, Inland & Coastal Premium Finance Company, LLC had called its loan to Debtor and PCIS due and had begun attempts to collect the indebtedness owed.

24.     Debtor also falsely represented in the Business Loan Agreement that there were no unfunded liabilities for employee benefit plans of RTR Holdings, PCIP, and PCIS; however, at the

time Debtor executed the Business Loan Agreement, the promised 401(k) contribution for producer Joshua Russell had not been fully funded. Debtor also did not disclose that producer Joshua Russell was owed outstanding producer commissions.

### DEBTOR'S WILLFUL AND MALICIOUS INJURY TO PROVIDENCE'S COLLATERAL

25. Upon information and belief, PCIS and PCIP were paid by their clients in 2018 and 2019 amounts totaling as much as $1,200,000.00 for insurance premiums that Debtor failed to remit to the appropriate insurance carriers.

26. Instead of remitting on behalf of their client the premium payments to the appropriate insurance carriers and depositing the resulting commissions in the Commission Deposit Account securing the Providence Loan, as required under the Business Loan agreement, Debtor converted, absconded or otherwise used those funds for his personal benefit.

27. Debtor has been indicted by the Baldwin County District Attorney because of this scheme to "knowingly and with intent to defraud, commit the embezzlement, abstraction, theft, or conversion of….premiums" between February 1, 2019 and August 31, 2019.

### COUNT ONE - 11 U.S. C. §523(a)(2)(B)

28. Providence restates all material allegations contained in paragraphs 1-27 as if fully set forth herein.

29. On March 14, 2019, Debtor, on behalf of insiders RTR Holdings, PCIS and PCIP, applied for and was subsequently extended credit by Providence.

30. Debtor personally guaranteed the indebtedness owed by Borrower to Providence.

31. To induce Providence to extend credit to Borrower, Debtor submitted to Providence a Credit Application, Personal Financial Statement, the 2018 Annual Income and Expense Statement of RTR Holdings, and various insurance policy and commission reports for PCIP and PCIS which falsely reported revenue, annualized commissions, and debt schedules, as set forth in Paragraphs 17-19 and 22 above.

32. At closing of the Providence Loan, Debtor made additional written false representations regarding his and his insiders' financial condition in the Business Loan Agreement, as set forth in Paragraphs 20-21, 23-24 above.

33. Providence reasonably relied on the truth and accuracy of the above written statements regarding the financial condition and annualized commissions of RTR Holdings, PCIS, and PCIP, in underwriting and extending the Providence Loan, and such reliance was acknowledged by Debtor in Paragraph 2(f) of the Additional Provisions to the Business Loan Agreement, which states, "Borrower acknowledges that Lender is relying, and is entitled to rely, upon each of the representations, warranties and covenants of Borrower made or given in this Agreement in determining to enter into this Agreement, to provide the Loan and all Advances…."

34. Debtor made these representations in Paragraphs 17-24 above with the knowledge that they were false and with the intent to deceive Providence and induce Providence to extend credit to Debtor, RTR Holdings, PCIP, and PCIS.

WHEREFORE, Providence demands this Honorable Court enter an Order granting Providence a non-dischargeable judgment against Debtor pursuant to 11 U.S.C. § 523(2)(2)(B) in

the amount of $1,913,183.45, plus reasonable attorney's fees and costs and grant to Providence such other and further relief to which it may be entitled.

### COUNT TWO - 11 U.S. C. §523(a)(6)

35. Providence restates all material allegations contained in paragraphs 1-34 as if fully set forth herein.

36. The obligations of RTR Holdings, PCIS, PCIP, and Debtor to Providence was secured by "all amounts payable to Borrower with respect to any commissions, including Insurance Commissions (as defined in the Loan Agreement) due on or after the date hereof."

37. Throughout 2018 and 2019, Debtor converted for his own use and in violation of the Providence Security Agreement approximately $1,200,000.00 of PCIP's and PCIS's clients' insurance premiums and the resulting commissions due PCIP and PCIS which were pledged to and secured the Providence Loan.

38. Debtor's conversion of and misdirection of insurance premiums paid by the clients of PCIP and PCIS and the resulting commissions subject to the perfected security interest of Providence securing the Providence Loan constituted a "willful or malicious injury by the Debtor to another entity or to the property of another entity…".

WHEREFORE, Providence demands this Honorable Court enter an Order granting Providence a non-dischargeable judgment against Debtor pursuant to 11 U.S.C. § 523(a)(6) in the amount of $1,913,183.45 plus reasonable attorney's fees and costs and grant to Providence such other and further relief to which it may be entitled.

    */ Robert P. Reynolds*
Robert P. Reynolds (REYNR4202)

    */ William E. McCartney*
William E. McCartney (MCARW9875)

Attorneys for Providence Bank

OF COUNSEL:
REYNOLDS, REYNOLDS & LITTLE, LLC
Post Office Box 2863
Tuscaloosa, Alabama 35403-2863
Telephone: 205-391-0073
Facsimile: 205-391-0911
Email: rreynolds@rrllaw.com
       wmccartney@rrllaw.com
Our File No. 1579.0000

Non-Dischargeability Complaint.1579.0000